## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **AMIR ALEXANDER BAHRAMI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **FILE NO.: 1:11-cv-04483** |
| **MAXIE PRICE CHEVROLET-** | ) | |
| **OLDSMOBILE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT MAXIE PRICE'S MOTION IN RESPONSE TO THIS COURT'S OCTOBER 15 ORDER REGARDING AUDIO TAPES, PRIVILEGE LOGS AND UNIDENTIFIED WITNESSES AND MEMORANDUM IN SUPPORT THEREOF

COMES NOW, Maxie Price Chevrolet-Oldsmobile, Inc. (Maxie Price or Defendant), the Defendant in the above-styled civil action, and files this Motion In Response To This Court's October 15 Order Regarding Audio Tapes, Privilege Logs And Unidentified Witnesses and Memorandum in Support Thereof. As set forth below, Plaintiff and his counsel have withheld and failed to timely produce or disclose the existence of secretly recorded conversations between Plaintiff, unidentified management of Defendant, and other unidentified witnesses.

In summary, there is no basis for Plaintiff to refuse to provide these recordings and an updated privilege log to Defendant. To allow otherwise would allow Plaintiff

to take the fundamentally unfair act of shielding discoverable, relevant information from Defendant.  As a result, Defendant respectfully requests that Plaintiff produce the tapes and/or identify them on his privilege log.

## INTRODUCTION AND STATEMENT OF THE CASE

Plaintiff Amir Alexander Bahrami ("Bahrami") filed the instant civil action on December 22, 2011, alleging that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e *et seq.*, and retaliated against.  Plaintiff also asserts claims for attorneys' fees and costs. Plaintiff's claims arise out of his termination on or about May 12, 2010 from his position with Defendant.

During the course of discovery in this case, Defendant served its First Interrogatories and First Request for Production of Documents to Plaintiff in which Defendant requested information in Interrogatory No. 4 regarding statements obtained by Plaintiff.  Specifically, Defendant requested:

> Please state the name, address, telephone number and employer of any persons from whom any statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded, voluntary, involuntary, etc...) have been taken by you or anyone acting on your behalf regarding Plaintiff's claims or Defendant's defense in this matter.

In response to this interrogatory, Plaintiff raised vague objections without any specific basis, and then referred Defendant to Plaintiff's privilege log.  (Exhibit 1,

Plaintiff's Responses to Defendant's First Defendant's Interrogatories to Plaintiff.)

Defendant also asked Plaintiff to state all communications Plaintiff had with current and former employees with Defendant, including the date and substance of the communication.   Again, Plaintiff raised very vague objections without any specific basis, and then referred Defendant to Plaintiff's privilege log.  (Exhibit 1, Request No. 12.)

Defendant also asked Plaintiff to produce statements (of all types, including oral or written) taken "from any person with respect to the facts of this case and/or which resulted from any investigation conducted by any person regarding claims asserted in this case and defenses thereto…"  (Exhibit 2, Plaintiff's Responses to Defendant's Requests for Production of Documents, Request No. 4.)   Plaintiff claimed to attach all responsive, non-privileged, relevant documents in his possession, custody or control.  Id.

No tape recordings were produced with these documents.   Plaintiff did produce a privilege log that generally listed "witness statements, including audio recordings and written statements," but that log failed to identify the authors, dates, or subject matter of these statements.  (Exhibit 3, Privilege Log.)  Instead, the authors were listed as "various" and the subject was listed as "Plaintiff's claims and defenses."  (Exhibit 3.)  Without any further explanation, Plaintiff's log declared that

these statements were protected by "Work product." (Exhibit 3.)

During settlement discussions, Plaintiff used the tapes and other evidence as a bargaining chip, agreeing to provide additional evidence when Defendant made a settlement offer. [1] (Exhibit 4, Declaration of B. Brent Terry, former counsel for Defendant, ¶ 3.)

Ultimately, the issue of the surreptitiously recorded audio tapes came up in discovery discussions during the months of June-August, when Defendant was represented by its prior counsel, Mr. Terry.[2] Plaintiff's counsel and former counsel for Defendant discussed the production of audio recordings taken by Plaintiff or Plaintiff's counsel of witnesses that Plaintiff apparently desires to use in this case. Plaintiff and Defendant disagreed about the requirements to produce these recordings, and exchanged several letters and emails during June-August regarding how to handle their disagreement. (Exhibit 5, August 15, 2012 Email Chain, Exhibit 6, August 24, 2012 Email Chain.)

Ultimately, on August 15, Mr. Terry agreed that Plaintiff and Defendant would reach an agreement in the future, stating "I'll agree to the compromise you

---

[1] Plaintiff later produced a single recording of unknown individuals and refused to identify the individual names. He also refused to produce any other recordings.

[2] Freeman Mathis & Gary began representing Defendant in early September. All actions taken prior to that time were taken by Defendant's prior counsel, Mr. Terry.

proposed to produce the one audio recording of current management or management employed at the time of the statement at the end of that person's deposition." (Exhibit 5.)  At the time Mr. Terry sent the email, he did not intend to further press the issue of whether Plaintiff needed to update her privilege log nor did he intend to take further actions to obtain the recordings. (Terry Dec. ¶ 5.)

However, Mr. Terry did not understand that he and Ms. Millican were reaching a binding agreement, but instead, he viewed this as an informal compromise on a discovery issue. (Terry Dec. ¶ 6.)  Mr. Terry also understood that, both he and Ms. Millican were free to change or reconsider this informal compromise at any time prior to the deposition of the unidentified individual mentioned in the August 15 email (Plaintiff refused to identify their name(s)). (Terry Dec., ¶ 6.)

This understanding is confirmed by Plaintiff's own email to Mr. Terry sent on August 24, just 9 days after the August 15 email.  This email does not reference any agreement between the parties regarding audio recordings or a privilege log. (Exhibit 6.)  Plaintiff later sent a follow-up email attempting to agree that the "same" agreement should apply as was included in the August 15, 2012 email, however Mr. Terry does not recall ever receiving this email, and he does not believe he ever responded to this email.  (Exhibit 7, Email dated August 24 From

Lisa Millican To Brent Terry; Terry Dec. ¶ 7.)  At the time that Freeman Mathis & Gary took over the defense of this matter, Mr. Terry believed that the decision of whether or not to seek the recordings and an updated privilege log was going to be left to Defendant's new counsel.  (Terry Dec. ¶ 8.)

Ultimately, this firm (Freeman Mathis & Gary) took over as counsel for Defendant.  Of course, as is clear from this Motion, Defendant seeks discovery of all audio recordings Plaintiff has taken of Defendant's employees and management, and any other recordings Plaintiff intends to use as evidence in this trial.  To the extent that Plaintiff alleges that he is withholding witness statements based upon the work-product doctrine, Plaintiff must identify these statements in his privilege log.

Defendant submits that Plaintiff has improperly failed to identify or produce his secretly recorded conversations, and that any such recordings are not entitled to protection under the work product doctrine.  Defendant further shows that no agreement between the parties limits the production of these recordings or Plaintiff's obligation to update his privilege log.  Accordingly, Defendant respectfully requests that the Court order Plaintiff to produce the surreptitiously recorded statements and/or to update his privilege log with sufficient specificity to allow Defendant to understand what statements Plaintiff alleges are protected and why.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiff seeks to enforce an alleged "side agreement" between Plaintiff's counsel, Ms. Millican, and Defendant's former counsel, Mr. Terry, regarding production of surreptitiously recorded audio statements which either Plaintiff or his counsel obtained from one or more employees and managers of Defendant. Plaintiff's attempts fail for several reasons, and Plaintiff should be compelled to produce the recordings and/or to update his privilege log.

First, the facts, evidence and declaration of Mr. Terry establish that Plaintiff and Defendant never reached a meeting of the minds regarding a "side agreement" to allow Plaintiff to refuse to produce relevant audio recordings, nor did Plaintiff and Defendant reach an agreement allowing Plaintiff to refuse to update his privilege log.

Even assuming, *arguendo*, that any such agreement was reached (which it was not), such an agreement is an unenforceable "side agreement."

Finally, even if the parties reached an agreement and it could be enforceable, any such agreement fails because it lacks consideration and is a vague "agreement to agree."

Because there is no agreement between the parties, Plaintiff should be compelled to produce the audio recordings that he surreptitiously recorded of

unknown members of management and unknown employees of Defendant, as these recordings are not entitled to any protection.

## I.     Plaintiff And Defendant Never Reached An Agreement Regarding The Audio Recordings And Plaintiff's Privilege Log

Plaintiff hides behind an argument that the audio tapes Plaintiff secretly recorded of Defendant's employees and management presently are not discoverable because he contends that he entered into a fundamentally unfair compromise with opposing counsel to hide these relevant, discoverable recordings. The facts, however, do not support such a claim.

Although Mr. Terry agreed on August 15 that, at that time, he would not press the issue of production of audio tapes and an updated privilege log, Mr. Terry and Plaintiff's counsel had many discussions both before and after the August 15 email, and Mr. Terry never understood that he entered into a binding agreement not to allow Defendant's new counsel an opportunity to seek this important discovery. (Terry Dec. ¶ 5-6.)  Mr. Terry has stated, under oath, that he simply understood that he entering into an informal discovery compromise that could be changed or revisited at any time prior to the depositions referenced in the August 15 email. (Terry Dec. ¶ 6.)

In the telephonic hearing with this Court, Plaintiff relied upon the August 15 email to argue that an enforceable agreement was reached, but the conversations

and emails of the parties state otherwise.  The fact is (and Plaintiff cannot dispute) that Mr. Terry believed that there was no binding agreement regarding this discovery.  (Terry Dec. ¶ 6.)

This evidence, combined with Mr. Terry's sworn statement, shows that the parties never reached a meeting of the minds sufficient to enter into a binding agreement.  Georgia law controls issues of contract formation, and "A contract cannot be enforced if its terms are incomplete, vague, indefinite or uncertain." Burns v. Dees, 252 Ga.App. 598, 601-02, 557 S.E.2d 32, 35 (2001).  In this regard, it is "well-established that a contract does not exist unless the parties agree on all material terms," and if there is not a meeting of the minds, there can be no enforceable contract.  Id.; Perimeter Realty v. GAPI, Inc., 243 Ga.App. 584, 533 S.E.2d 136 (2000).

Here, the facts and evidence identified above clearly establish that Mr. Terry did not understand that he was entering into an enforceable contract with Plaintiff.  For this reason, the parties never entered into an enforceable side agreement regarding the non-production of Plaintiff's "secret" audio tapes and Plaintiff's obligation to update his privilege log.

## II.   Any Agreement Between Plaintiff And Defendant Is An Unenforceable Side Agreement

Plaintiff and Defendant do not agree about whether or not a side agreement

was reached between the parties regarding the discovery in question.  Even assuming, *arguendo*, that any such agreement was reached, Plaintiff cannot dispute that any such agreement is nothing more than an unenforceable side agreement relating to discovery matters.

Courts within this District and around the country have ruled that side agreements between counsel related to discovery matters are unenforceable by the court.  For example, in Porter v. Eli Lilly And Company, 2007 WL 1630697 (N.D. Georgia June 1, 2007), the plaintiff alleged that she and the defendant reached an agreement to allow the plaintiff to take a fact deposition after the close of discovery. Id., at *1.  When this agreement was not honored, the plaintiff filed a motion with the court seeking a discovery extension.  Id., at *2.  In denying the plaintiff's motion, Judge Forrester commended a plaintiff for choosing not to argue that her agreement with opposing counsel was binding, stating "Plaintiff's counsel does recognize that the court does not enforce any 'side agreements' on discovery issues."  Id.  The ruling that discovery side agreements will not be enforced by courts is supported by decisions from around the country.  See Construction Equipment Leas Co. v. U.S., 26 Cl. Ct. 341 (1992) (court denied plaintiff's request for additional discovery based upon alleged agreement between counsel because, even if such an agreement was entered into between the parties, the court would not honor this agreement, noting

"litigation in this court must be controlled by this court and its rules and not by side agreements between counsel"); Ducharme v. Savasenior Care, Inc., 2007 WL 80696 (D.Colo. Jan. 5, 2007) (noting that "side agreements made by the parties on their own with regard to when and how discovery is to be made…are not enforceable by the Court."); Executive Air Taxi Corporation v. City of Bismarck, North Dakota, 2006 WL 3544386, at *2 (D.N.D. Nov. 7, 2006) (refusing to enforce an agreement between the parties regarding payment for witness attendance at a deposition because "side agreements regarding discovery expenses between litigants are fine but the Court will not be put in the position of enforcing such agreements other than to tax costs as allowed by statute.").

In short, the case law from this district and from around the country is without dispute: side agreements between parties regarding discovery are not enforceable, and the court must apply the law and rules that exist to the particular issue in question.  Here, this Court should analyze whether or not Plaintiff must produce the audio recordings and update his privilege log under the law covering these issues, rather than enforce any alleged agreement Plaintiff claims she has made regarding discovery in this case.  As explained in detail in section IV and V below, this Court should grant Defendant's Motion and order Plaintiff to produce the audio tapes in question.

## III.   There Is No Enforceable Agreement Because Any Agreement Lacks of Consideration And Is A Vague Agreement To Agree

Even assuming, *arguendo*, that there was an agreement entered into between Plaintiff and Defendant, and even assuming this Court could enforce such an agreement, any agreement between the parties lacks consideration and is an unenforceable "agreement to agree."

Under Georgia law, "[i]t is well established that no contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced. If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable 'agreement to agree.'" GE Commercial Distribution Finance Corp. v. Ball, 2012 WL 2890130, at *2 (11th Cir. July 13, 2012) citing Kreimer v. Kreimer, 274 Ga. 359, 552 S.E.2d 826, 829 (Ga. 2001) (quotations omitted).   Even if the terms are sufficiently definite, if an agreement simply is to have the parties agree to something in the future, the agreement also is unenforceable. Doll v. Grand Union Co., 925 F.2d 1363, 1367-68 (11th Cir. 1991) citing Hartrampf v. Citizens & S. Realty Investors, 157 Ga.App. 879, 278 S.E.2d 750, 752 (1981).   Finally, of course, an essential element to any enforceable agreement is valid consideration. See O.C.G.A.   § 13-3-1.

Any "agreement" was to allow Plaintiff to "produce the one audio recording of

current management or management employed at the time of the statement at the end of that person's deposition." (Exhibit 5.)  Any agreement regarding the privilege log stated: "I agree with your analysis re: the privilege log." (Exhibit 5.)  Plaintiff then tried to make the August 15 "agreement" part of the August 24 stay of depositions, however, Mr. Terry does not recall receiving this email and did respond to this email, nor did he understand that the depositions were stayed in return for any agreement regarding the recordings and the privilege log. (Exhibit 7; Dec. of Terry ¶ 7.)  The emails (read together) do not provide for any consideration to be given to Defendant, nor do they provide definite terms of any agreement.  For example, the emails do not indicate what tape(s) will be produced, the precise date when that will occur, what other tapes Plaintiff has and how those tapes will be handled, whether or not this agreement can be modified, and if so, how, and what Plaintiff will receive as consideration, and importantly, what agreement, if any, is actually being reached regarding a privilege log.

    In addition, the declaration of Mr. Terry makes clear that he understood that he and Ms. Millican were entering into an agreement that was not binding at the time, but instead, was a compromise that they would agree to enter into an agreement at a future time (on the date of the deposition of the individual Plaintiff refused to identify in the August 15 email).

None of the emails provide any valid consideration for the alleged "agreement," especially because Mr. Terry does not recall receiving Plaintiff's second August 24 email and he did not respond to said email.  (Exhibits 5-7).

Under controlling Georgia law, the "agreement" Plaintiff seeks to enforce is unenforceable because it is vague and ambiguous, lacks consideration, and is premised upon entering into an agreement in the future.  For this reason, Defendant respectfully requests that this Court grant its Motion, ordering Plaintiff to produce the audio recordings and update his privilege log.

## IV.   Plaintiff's Or His Counsel's Secretly Recorded Tape Conversations Are Discoverable And Not Protected By The Work Product Doctrine

Federal Rule of Civil Procedure 26(b)(3) provides that, ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.  This work product doctrine is an exception to the broad rules of discovery, and the party asserting such protection (in this case, Plaintiff) has the burden of establishing that the doctrine applies.  Carnes v. Crete Carrier Corp., 244 F.R.D. 694, 697 (N.D. Ga. 2007).

Federal courts consistently have held that, when a party secretly, surreptitiously, and clandestinely tape records a conversation with a witness, that recording is discoverable and is not protected by the work product doctrine set forth in Rule 26(b)(3).  In this regard, in Parrott v. Wilson, 707 F.2d 1262, 1272 (11th Cir.

1983), the Eleventh Circuit held that any work product privilege applicable to tape-recorded conversations between the plaintiff's attorney and two fact witnesses was vitiated by the attorney's clandestine recording of those conversations. In so holding, the Court relied on the American Bar Association's Committee on Ethics and Professional Responsibility's ruling (ABA Committee on Professional Responsibility, Formal Opinions, No. 337 (1974)) that the recording of conversations of witnesses without their consent is unethical. Id. at 1271.

Subsequently, this Court in Otto v. Box U.S.A. Group, Inc., 177 F.R.D. 698, 700-701 (N.D. Ga. 1997), extended the holding in Parrott to clandestine recordings by *pro se* plaintiffs and plaintiffs who were not represented by counsel at the time of the recordings. The Court noted that permitting a party to have an advantage because of a secret tape recording would damage and lead to an imbalance of the adversarial process, "regardless of whether the attorney or the client operates the tape recorder." Id. at 701.

As noted recently by this Court in Price v. Gwinnett Family Dental Care, LLC, 2007 WL 3477771, at *2 (N.D. Ga. Oct. 31, 2007), the ABA since has withdrawn Opinion 337. Nevertheless, the withdrawal of Opinion 337 is irrelevant to the issue before the Court on this Motion and does not excuse the failure of the Plaintiff to produce the clandestine recordings. Rather, as numerous federal courts have held,

pursuant to Rule 26(b)(3) itself and irrespective of any ethics rules, the act of concealing from a witness that his or her conversation is being recorded vitiates the work product doctrine and subjects the recording to production during discovery.

For example, in Sea-Roy Corp. v. Sunbelt Equipment & Rentals, Inc., 172 F.R.D. 179, 185 (M.D.N.C. 1997), decided prior to the withdrawal of ABA Opinion 337, the court held that, since the plaintiff failed to inform witnesses or potential witnesses that their conversations were being recorded, the recordings lost any work product protection.  In so holding, the court discussed the applicable ethics rules, including ABA Opinion 337, but then found that the purpose and structure of Rule 26(b)(3) itself compelled the conclusion that the recordings were discoverable and not protected by the work product doctrine.  Specifically, the court stated:

> The structure of Rule 26(b)(3) itself provides a more direct reason for declining to provide work product protection to the surreptitious recording of conversations by either attorneys or clients. The rule both encompasses electronically recorded statements and regulates them. Parties have a right to their adopted and verbatim statements and other persons may request a copy of theirs.  The right to request necessarily presumes awareness of the statement. Therefore, Rule 26(b)(3) implicitly requires disclosure of the existence of surreptitiously recorded statements at some time prior to trial. As a matter of policy and prudential construction, this Court determines that Rule 26(b)(3) requires a recording party to inform the person being recorded at the time of the recording in order to qualify the statement for work product protection.  This construction significantly eases the administration of Rule 26(b)(3).  The rule encourages parties to inform persons who have been recorded of that fact so they know about it. The Court can then rely on them to enforce their own rights. If a party does choose to

> surreptitiously record conversations, the statements will not be accorded work product protection. In that event, should a party want to obtain the statement of a non-party witness or potential witness, the Court need only resolve the less burdensome issue of relevancy untainted by work product disputes.  This construction has an added benefit of removing any basis for encouraging, permitting, or rewarding parties for doing what would be considered unethical behavior for an attorney.

Id. at 184-185 (internal citations omitted).  See also Smith v. WNA Carthage, L.L.C., 200 F.R.D. 576, 579 (E.D. Tex. 2001) (ruling, while ABA Opinion 337 was in effect, that work product protection was not available for secretly recorded tapes of conversations between the plaintiff and employees of her former employer); Williams v. Gunderson Rail Services, LLC, 2008 WL 145251, at *3 (W.D. La. Jan. 14, 2008) (ruling, after ABA Opinion 337 was withdrawn in 2001, that the plaintiff's clandestine, unconsented recording of conversations with employees of the defendant vitiated the work product doctrine); Price, 2007 WL 3477771, at *3 n.4 (noting that defendant took issue with plaintiff's attorney's questioning of deposition witnesses regarding recorded conversations that had not then been provided to defendant and finding that plaintiff's failure to produce recorded conversations in timely manner was not appropriate).

In the instant case, Plaintiff deliberately has failed to produce the recordings and has failed to update his privilege log to identify those statements which he alleges are protected in order to gain an unfair tactical advantage.  Specifically,

Plaintiff repeatedly has tried to avoid producing the recordings, and has now gone so far as to ask this court to enforce an "agreement" which would allow him to improperly shield these discoverable documents from review.  This is particularly troubling because this is not the first time Plaintiff's counsel has attempted this exact same tactic.  See Jacqueline James v. Frederick J. Hanna & Associates, P.C., Case No. 1:08-CV-3674-CAM-GGG [Doc. 86.]

Pursuant to the applicable federal case law discussed above, Plaintiff's covert recording of his conversation(s) with unknown employees and management of Defendant vitiated any work product protection that otherwise would have been applicable to those recordings.  Accordingly, Plaintiff is required to disclose and produce the recordings prior to questioning anyone at their deposition.  Plaintiff should not be able to benefit from his own improprieties in failing to produce the recordings in a timely manner.

## V.    Plaintiff Must Amend His Privilege Log To Disclose The Existence Of All Recorded Conversations

Plaintiff apparently contends that his privilege log is sufficient because it informs Defendant that Plaintiff has witness statements.  Federal Rule of Civil Procedure 26(b)(5) provides that, when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i)     expressly state the claim; and

(ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

In <u>Carnes</u>, 244 F.R.D. at 698, this Court stated the burden of the party asserting the work product doctrine to provide a factual basis for its assertions is met when the party produces "a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit from counsel."   Although the Court in <u>Carnes</u> did not define the word "detailed," it cited with approval a case from another federal district court, <u>Triple Five of Minn., Inc. v. Simon</u>, 212 F.R.D. 523, 528 (D. Minn. 2002), which found that the work product doctrine was applicable where the asserting party provided detailed privilege logs "which for each document withheld listed the type of document, the date of creation, the author, the recipient, the subject matter, and the applicable privilege."

The Court in <u>Bennett v. CSX Transp., Inc.</u>, 2006 WL 5249702, at *10 n.7 (N.D. Ga. Sep. 19, 2006), provided more specific guidance by stating that a privilege log must identify each document withheld pursuant to a claim of privilege or protection by date, author, recipients (including recipients of copies), the specific privilege or protection claimed, and a description of the subject matter of each

document in sufficient detail to permit opposing counsel and the court to assess the applicability of the claimed privilege or protection.  See also Automed Technologies v. Knapp Logistics & Automation, Inc., 382 F. Supp. 2d 1368, 1371 (N.D. Ga. 2005) (ordering party to prepare privilege log containing the following information about each document withheld: (1) document type; (2) date; (3) author; (4) recipients or persons to whom claimed privileged information was communicated; and (5) specific basis for privilege claimed).

A plain reading of the privilege log that Plaintiff produced reveals that Plaintiff failed to provide any information sufficient under Rule 26(b)(5) to apprise Defendant what tape recordings Plaintiff maintained that are relevant to his claims.  Specifically, Plaintiff's privilege log listed "witness statements, including audio recordings and written statements" by "various individuals."  (Exhibit 3, Privilege Log.)  Nowhere on this privilege log did Plaintiff identify who provided the witness statements, when the statements were made or the specific subject matter of the statements, thus making it virtually impossible for Defendant to discern what privileged documents Plaintiff possessed and whether any such documents consisted of recordings of conversations with Defendant's employees (or any other witnesses, for that matter).[3]

---

[3] In fact, Plaintiff's initial disclosures and discovery responses have not identified any witnesses with particularity other than the original three Plaintiffs in this action.

This Court specifically has held that the type of bare and vague information Plaintiff provided on his privilege log does not meet the standard for a privilege log pursuant to Rule 26(b)(5).  See Williams v. Taser Intern., Inc., 2007 WL 1630875, at *4 (N.D. Ga. Jun. 4, 2007).  Therefore, Defendant respectfully requests that the Court order Plaintiff to produce a supplemental privilege log specifically identifying each document withheld by author, recipient, date, type and subject matter, and the specific basis for each privilege claimed.  See United Investors Life Ins. Co. v. Nationwide Life Ins. Co., 233 F.R.D. 483, 488-489 (N.D. Miss. 2006) (holding there was insufficient information in privilege log to determine whether entry regarding "legal advice" contained in email from party's counsel was protected by attorney-client privilege because log did not indicate whether communication was among party's attorneys and their representatives and ordering party to amend log entry to include every element of attorney-client communication, including identities of attorney and representatives).

## VI.   CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court grant Defendant's Motion and order Plaintiff to produce all recordings he has of witnesses, and supplement his privilege log.

This 19th day of October, 2012.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**


*s/ Joyce M. Mocek*
Joyce M. Mocek
Georgia Bar No. 515005
Martin B. Heller
Georgia Bar No.: 360538

Attorneys for Defendant

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339
T: (770) 818-0000
F: (770) 937-9960
E: jmocek@fmglaw.com
E: mheller@fmglaw.com


## CERTIFICATE OF COMPLIANCE

By his signature above, Joyce M. Mocek certifies that her brief has been prepared in Times New Roman, 14 point font, in compliance with Local Rule 5.1B.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **AMIR ALEXANDER BAHRAMI,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION** |
| | ) **FILE NO.: 1:11-cv-04483** |
| **MAXIE PRICE CHEVROLET-** | ) |
| **OLDSMOBILE, INC.** | ) |
| | ) |
| **Defendant.** | ) |

## CERTIFICATE OF SERVICE

I further certify that on this day I electronically filed the foregoing **DEFENDANT MAXIE PRICE'S MOTION FOR PROTECTIVE ORDER ON PLAINTIFF'S TAPES, PRIVILEGE LOGS AND UNIDENTIFIED WITNESSES AND MEMORANDUM IN SUPPORT THEREOF** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

> Lisa T. Millican
> Greenfield Millican P.C.
> 607 The Grant Building
> 44 Broad Street, N.W.
> Atlanta, Georgia 30303

This 19th day of October, 2012.

> *s/ Joyce M. Mocek*
> Joyce M. Mocek
> Georgia Bar No. 515005
>
> Attorney for Defendant

Exhibit 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LARRY MATHEWS, AMIR ALEXANDER BAHRAMI, and GREGORY WILSON,<br><br>       Plaintiffs,<br><br>       v.<br><br>MAXIE PRICE CHEVROLET-OLDSMOBILE, INC.,<br><br>       Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO.:<br>1:11-CV-04483-SCJ-AJB |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO EACH PLAINTIFF

COMES NOW, Plaintiffs Larry Mathews ("Mr. Mathews"), Amir Alexander Bahrami ("Mr. Bahrami") and Gregory Wilson ("Mr. Wilson") (collectively "Plaintiffs"), by and through their undersigned counsel of record and pursuant to the Federal Rules of Civil Procedure and local rules of this Court, and provides their first responses to Defendant's First Interrogatories and Requests for Production of Documents (collectively these "Requests") as follows:

## GENERAL RESPONSE OBJECTIONS

1.     Plaintiffs object to these Requests to the extent that they can be construed to seek information or documents that is/are not relevant to the subject matter of this action or that are neither admissible in evidence nor reasonably calculated to lead to the discovery thereof.  To the extent that Plaintiffs respond to such Requests, Plaintiffs doe not concede that this information or documents requested are relevant to this action.  Plaintiffs expressly reserve the right to object to further discovery into the subject matter of any of these Requests.

2.     Plaintiffs object to these Requests to the extent that they are vague, overly broad, unduly burdensome, oppressive, and/or premature, and thus not susceptible to response at this time.

3.     Plaintiffs object to all Requests seeking identification of "each," "all," or "any" facts, language, documents, information or persons, which may be related to a specific point or points, as being unduly burdensome, and not within the practical capabilities of Plaintiffs.  In each case where some answer or production is provided, such answer or production is based upon all information obtained by a logically directed search through the records of Plaintiffs.  Plaintiffs have not undertaken or completed a review of every document they retain and object to any purported requirement to do so.

4.     Plaintiffs reserve their right to object to the admission into evidence of any and all information made available in response to the requests on any ground including, but not limited to, relevance and materiality.   These objections and responses are based upon information developed and documents reviewed to date, and will be amended as required by the Federal Rules of Civil Procedure, the local rules of this Court and such further orders of the Court as may be entered.

5.     Plaintiffs object to these Requests to the extent that they seek information, disclosure of which would violate the privacy rights of individuals, or that would result in the disclosure of confidential commercial information, trade secrets or proprietary information.

6.     Plaintiffs object to these Requests to the extent that they demand information or production of documents immune from disclosure under the attorney-client privilege, attorney work product doctrine or any other privilege, protection or immunity provided by law.  A privilege log is produced herewith.

7.     Plaintiffs object to these Requests to the extent that they require Plaintiffs to provide information and produce documents supporting their present contentions and to speculate as to their future contentions prior to the completion of discovery.  Such requests call for speculation and legal conclusions and are unduly burdensome.

- 3 -

8.    Plaintiffs object to these Requests to the extent that they require disclosure of mental impressions, conclusions, opinions or legal theories of any attorney or other representative of a party concerning this litigation.

9.    Plaintiffs object to the "Instructions" to the extent the "definitions" contained therein purport to impose obligations in responding to the Requests different from the obligations imposed by the Federal Rules of Civil Procedure and the local rules of this Court.

10.    Plaintiffs object to these Requests to the extent that they do not describe the requested documents or information with reasonable particularity.

11.    Plaintiffs object to these Requests to the extent the information or documents requested are a matter of public record and production would cause undue burden and expense.

12.    Plaintiffs object to these Requests to the extent the information or documents requested are not in the possession, custody or control of Plaintiffs.

13.    Plaintiffs' responses to these Requests are based upon information presently available. Plaintiffs have completed neither their discovery nor their preparation for trial. Accordingly, these responses are made without prejudice to Plaintiffs' rights to present additional evidence or contentions at trial based upon information later obtained or evaluated. Although Plaintiffs have made a diligent

- 4 -

search of their records in an effort to locate all documents, which appear to be responsive to this Request, Plaintiffs reserve their right to supplement or amend their responses or present additional evidence or contentions at a later date.

14.    Although not specifically set forth below in each response, Plaintiffs move for a protective order of all information Plaintiffs contend is not subject to production and will move for a protective order at the appropriate time, should Defendants pursue production after reviewing Plaintiffs' responses to these Requests.

## SPECIFIC INTERROGATORY RESPONSES AND OBJECTIONS

Without waiving the above General Responses and Objections, Plaintiffs make the following specific answers, responses and objections.

**REQUEST NO. 1**

State the name, address, telephone number and employer of any persons, including any party, who, to your knowledge, information or belief has knowledge of the claims asserted by you against Defendant; including in your answer a brief description of the matters known to each person listed.

**RESPONSE NO. 1**

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to

- 5 -

the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; requires Plaintiffs to speculate prior to the completion of discovery; seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections, Plaintiffs direct Defendants to their Initial Disclosures (non-redacted). As the discrimination, harassment and retaliation was near daily, if not daily, it was witnessed by a great deal of other employees. A list of employees and their contact information was provided in Plaintiffs' Initial Disclosures.

REQUEST NO. 2

EXCEPT FOR THOSE PERSONS WHOM PLAINTIFF INTENDS TO CALL ONLY FOR THE PURPOSES OF IMPEACHMENT: State the name, address, telephone number and employer of any persons, including any party, who, to your knowledge, information or belief has knowledge of the claims asserted by you against Defendant; including in your answer a brief description of the matters known to each person listed.

RESPONSE NO. 2

- 6 -

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; requires Plaintiffs to speculate prior to the completion of discovery; seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections, see response to Interrogatory Request No. 1.

**REQUEST NO. 3**

State the name, address, job title and employer's name of all persons, firms or corporations who, to your knowledge, have investigated any aspect of or physical object involved in the case, describing in detail the nature of all investigation undertaken, including whether any statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded, voluntary, involuntary, etc...) have been taken by your or by anyone acting on your behalf of anyone regarding Plaintiff's claims or Defendant's defenses in this matter.

**RESPONSE NO. 3**

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections, Plaintiffs are unsure what physical object Defendant is referring to in this Request but Plaintiffs have reviewed the documentation provided in response to Plaintiffs' Responses to Defendant's First Request for Production of Documents, attached hereto.

**REQUEST NO. 4**

Please state the name, address, telephone number and employer of any persons from whom any statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded, voluntary, involuntary, etc...) have been taken by you or by anyone acting on your behalf regarding Plaintiff's claims or Defendant's defenses in this matter.

**RESPONSE NO. 4**

See General Response and Objections Numbers 1 through 14.  Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; requests information, which is a matter of public record and would cause undue burden to expense to Plaintiffs; requests information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections, please see attached Plaintiffs' First Privilege Log.

**REQUEST NO. 5**

EXCEPT FOR THOSE PERSONS WHOM PLAINTIFF INTENDS TO CALL ONLY FOR THE PURPOSES OF IMPEACHMENT: Please state the name, address, telephone number and employer of any persons from whom any statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded, voluntary, involuntary, etc...) have been taken by you or by anyone acting on your behalf regarding Plaintiff's claims or Defendant's defenses in this matter.

**RESPONSE NO. 5**

- 9 -

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; requests information, which is a matter of public record and would cause undue burden to expense to Plaintiffs; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections, Plaintiffs interpreted Interrogatory No. 4 and 5 to request the same information. As such, Plaintiffs direct Defendant to their response to Interrogatory No. 4.

**REQUEST NO. 6**

Set forth the address of all residences at which you have lived from January 1, 2001 to present.

**RESPONSE NO. 6**

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections:

- 10 -

Mr. Mathews provides he lived at 2171 S. Deshon Road, Lithonia, Georgia 30058 for approximately 17 years.  Since May 2011, Mr. Mathews has resided at 2610 Darlington Court, Conyers, GA 30013.

Mr. Bahrami provides he lived at 10509 Scotland Well, Austin Texas 78750 from approximately 2001 through 2005 and for a short period in 2010.  He lived at 2870 Pharr Court South #2702, Atlanta, Georgia 30305 from approximately 2005 through 2007.  He lives at 2516 Gristhaven Lane, Buford, Georgia 30314 from approximately 2007 through 2009.  He lived at 2081 Executive Drive, Duluth, Georgia 30096 from approximately 2009 through 2011.  He lived at 810 West Saint Johns Avenue, #1386, Austin Texas 78752 in approximately 2011.  He currently lives at 420 Williford Street # 3, Commerce, Georgia 30529.

Mr. Wilson provides that he lived at 131st St., South Ozone Park, New York, 11420; 36 Buffalo Plains Lane, Palm Coast, Florida 32137; 501 Villa Avenue, Mableton, GA 30126; 5714 Pine Trail Drive, Bakersfield, California 93313; 1150 Rankin Street, L-4, Stone Mountain, Georgia; and now lives at 1906 West 3rd Street, #249, Los Angeles, California 90057.

**REQUEST NO. 7**

Has Plaintiff ever been a party to a lawsuit?  If so, provide the style, the suit, the court in which the suit was filed, describe the substance of the litigation and set forth the resolution, if any of the litigation.

RESPONSE NO. 7

See General Response and Objections Numbers 1 through 14.  Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; requires Plaintiffs to speculate prior to the completion of discovery; requests information, which is a matter of public record and would cause undue burden to expense to Plaintiffs.  Subject to and not waiving these objections, Mr. Mathews provides he cannot recall ever being a party to another lawsuit.  Mr. Bahrami provides he cannot recall ever being a party to another lawsuit.

REQUEST NO. 8

Please itemize all damages which you contend you have incurred as a result of the wrongdoing you assert in your Complaint, including a detailed explanation as to how you arrived at any sums.  Please include in your answer the exact amount of all income or monetary benefits you claim you would have obtained were it not for the alleged misconduct by Defendant.

RESPONSE NO. 8

- 12 -

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it is vague, overly broad and unduly burdensome; requires Plaintiffs to speculate prior to the completion of discovery; seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections, Plaintiffs direct Defendant to their Initial Disclosures.

**REQUEST NO. 9**

Has Defendant, or anyone acting on or on behalf of Defendant, admitted liability in this case? If so, describe the circumstances of such admission, who was present, what was said, the date and whether such admission was in writing or oral.

**RESPONSE NO. 9**

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it requires Plaintiffs to speculate prior to the completion of discovery; seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; does not request information with

- 13 -

reasonable particularity; requests information not presently in Plaintiffs' possession or control.   Subject to and not waiving these objections, Plaintiffs provide that while Defendant have not said "we discrimination, harass and retaliate" per se, their actions are tantamount to an admission of liability.

REQUEST NO. 10

Identify by name, address and dates of employment each and every employer for whom you have worked since your termination from Defendant, and for each employer identify the dates of employment, the identity of your supervisor(s), your earnings and reason for leaving that employment or termination.

RESPONSE NO. 10

See General Response and Objections Numbers 1 through 14.   Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories.   Subject to and not waiving these objections:

Mr. Mathews provides from approximately October 2009, through October 2011, he worked at Conyers KIA.   His supervisor was Jason Moore, 404-964-

- 14 -

4162.  He earned approximately $60,000 a year in Sales.  He left for more money. From October 2011, to date, Mr. Mathews works at Cobb County Kia in Kennessaw, Georgia.  His supervisor is Eugene King, 770-423-4404.  He earns approximately $120,000.00 per year as a Sub Prime Finance Manager.

Mr. Bahrami provides he was unable to secure alternative comparable employment for a significant period of time following his unlawful termination from Defendant.  In June 2011, Mr. Bahrami was hired as the Finance Director for Leif Johnson Ford, located at 501 East Konig Lane, Austin Texas 78752.  On January 3, 2012, Mr. Bahrami suffered a severe back injury and has not been released to return to work.

Mr. Wilson provides that after he was unlawfully termination from Defendant, he went to work at Douglasville Kia in Douglasville, Georgia.  His supervisor was Patrick Beck.  He earned approximately $48,000.00.  He worked there from January 2010, through August, 2010, whereupon he moved to Bakersfield California with the same company, where he worked at Bakersfield Hyundai at 5300 Wible Road, Bakersfield, California 93313, where he earned approximately $69,000.00 from August 2010 through October 2012.  Mr. Wilson moved to Los Angeles for a better position with L.A. Hyundai at L.A.X. located at 970   W.   Manchester   Boulevard,   Inglewood,   California   90301   earning

- 15 -

approximately $32,000.00 from October 2011 through present.  His supervisor is Dave Berry.  This is where Mr. Wilson is currently employed.

**REQUEST NO. 11**

Identify each and every business, by name and address, from which you have sought employment since leaving employment with Defendant and the date in which employment was sought at said business.

**RESPONSE NO. 11**

See General Response and Objections Numbers 1 through 14.  Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; requests information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections:

Mr. Mathews directs Defendant to Interrogatory Response No. 10.

Mr. Bahrami provides he applied to countless positions since he was unlawfully fired by Defendant.  For example, he applied for a position with Gene Evans Ford in Union City Georgia; Nash Chevrolet in Lawrenceville Georgia; Superior Chevrolet in Decatur, Georgia; Toyota Mall of Georgia in Buford,

Georgia; Wade Ford in Smyrna, Georgia Carl Black GMC/Buick/Chevrolet in Kennesaw, Georgia; Carl Black in Roswell, Georgia Team Ford in Marietta, Georgia; Team Chevrolet at Northpoint Alpharetta, Georgia; Jim Ellis Chevrolet at 5901 Peachtree Industrial Boulevard, Atlanta Georgia; Global Imports BMW at 500 Interstate North Parkway Atlanta, Georgia; Gwinnett Place Ford Lincoln at 3230 Satellite Boulevard, Duluth, Georgia; Gwinnett Place Nissan at 2555 Pleasant Hill, Duluth, Georgia; Mall of Georgia Ford at 4525 Nelson Brogdon Boulevard, Buford, Georgia; Crest Cadillac at 2701 N. Central Expressway, Plano, Texas; Crest Infiniti at 2501 N. Central Expressway, Plano, Texas; Grand Prairie Ford at 701 East Palace Parkway, Grand Prairie, Texas; Nissan of Mckinney at 3800 S. Central Expressway, McKinney, Texas; Stonebriar Chevrolet at 9950 Highway 121 Frisco, Texas; Reliable Chevrolet (TEXAS) at 800 N. Central Expressway, Richardson, Texas;  Toyota of Dallas at 2610 Forest Lane, Dallas, Texas; Toyota of Richardson at 1221 N. Central Expressway, Richardson, Texas; Van Chevrolet1700 I-35Carrollton, Texas; Vandergriff Acura at 1100 I-20 West Arlington, Texas; Vandergriff Chevrolet at 1200 W. I-20, Arlington Texas; Vandergriff Honda at 1104 W. I-20, Arlington, Texas; Vandergriff Hyundai at 1120 West I-20Arlington, Texas; Vandergriff Toyota at 1000 W. I-20, Arlington, Texas; Cerritos Nissan at 18707 E. Studebaker Cerritos, California; South County

- 17 -

Lexus at Mission Viejo at 28242 Marguerite Parkway, Mission Viejo, California;

Reliable Toyota Lexus BMW Audi Scion at 3521 E. Sunshine Street Springfield,

MO; and countless more via head-hunters and/or auto management locators.

Dealership Experts, LLC at 10935 Estate Lane Suite 440, Dallas, Texas, contact

Nino Parco, CEO, (214) 628-9494.   Dealer classifieds dot com/all online via

contact Dian Uslack, Owner at (404) 213-7196. This list is not exhaustive.

Mr. Wilson directs Defendant to Interrogatory Response No. 10.

**REQUEST NO. 12**

State in detail each and every communication had by you with any

employee or former employee of Defendant from your last date of

employment through the present, identifying the date of the communication,

parties to the communication, time of the communication, the location of the

Plaintiff and the other parties to the communication at the time of the

communication and provide the substance of each and every communication.

**RESPONSE NO. 12**

See General Response and Objections Numbers 1 through 14.  Specifically,

and as set forth above with greater specificity, Plaintiffs object to this Request to

the extent it seeks irrelevant discovery; is vague, overly broad and unduly

burdensome; requires Plaintiffs to speculate prior to the completion of discovery;

seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity. Subject to and not waiving these objections, Plaintiffs direct Defendant to Plaintiffs' First Privilege Log.

REQUEST NO. 13

Set forth in detail any and all complaints you made to any representative(s) of Defendant concerning the alleged harassment and discrimination you experienced while employed by Defendant identifying the date(s) upon which the complaint(s) was made, the person(s) to whom the complaint(s) was made, the substance of the complaint and any response thereto.

RESPONSE NO. 13

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it is vague, overly broad and unduly burdensome; requires Plaintiffs to speculate prior to the completion of discovery; seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests

information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections, Plaintiffs direct Defendant to Interrogatory No. 15.

REQUEST NO. 14

With respect to the specific allegations contained in your Complaint that Defendant and any of its employees/agents made offensive, discriminatory, harassing, and/or unlawful comments and remarks to you or in your presence or regarding you, set forth:

    (a)    the identity (name / address / phone) of all persons who allegedly made said offensive comments and remarks;

    (b)    the date that each offensive comment and remark was made;

    (c)    a description of the wording and/or substance of each offensive comment and remark;

    (d)    where each offensive comment and remark was made (i.e...the physical location of the person making the remark, your physical location at the time of the remark, etc...);

    (e)    the identity (name / address / phone) of all persons who you contend overheard or otherwise was a witness to each offensive comment and remark;

    (f)    all other facts upon which you make each of those allegations;

(g)     the identify of all other persons (name / address / phone) with knowledge relevant to each of those allegations; and

(h)     identify any documents or tangible items relevant to each of those allegations.

**RESPONSE NO. 14**

See General Response and Objections Numbers 1 through 14.   Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; seeks information immune from disclosure due to privilege; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections, Subject to and not waiving these objections, Plaintiffs direct Defendant to Interrogatory No. 15.

**REQUEST NO. 15**

With respect to the allegations contained in your Complaint that Defendant or any of its employees/agents took offensive, discriminatory, harassing, and/or unlawful actions toward you are regarding you, set forth:

(a)     the identity (name / address / phone) of all persons who allegedly took said action;

(b)     the date that each action was taken;

(c)     a description of the substance of each action;

(d)     where each action was taken (i.e...the physical location of the person taking the action, your physical location at the time of the action, etc...);

(e)     the identity (name / address / phone) of all persons who you contend was a witness to each action;

(f)     all other facts upon which you make each of those allegations;

(g)     the identify of all other persons (name / address / phone) with knowledge relevant to each of those allegations; and

(h)     identify any documents or tangible items relevant to each of those allegations.

RESPONSE NO. 15

See General Response and Objections Numbers 1 through 14.  Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections:

Mr. Mathews provides that during the entire length of his employment, Mr. Mathews was subject to harassment and discrimination based upon his race (black). The harassment and discrimination occurred daily and interfered with Mr. Mathews' work.  Mr. Mathews was offended and humiliated by the harassment and discrimination, which created a hostile work environment.

Mr. Mathews was harassed and discriminated against based upon his race by managers of Defendant or other persons employed by Defendant who had authority to oversee his working conditions and to direct Mr. Mathews' day-to-day activities. Mr. Mathews was also subject to similar comments from his non-management/ supervisory co-workers.

Mr. Mathews was paid only a 10% commission and $500 weekly draw. Upon information and belief, the other two white finance managers working for the Defendant at the same time as Mr. Mathews earned a 10% commission and a $1,000 weekly draw.

Shortly after he was hired, Scott Price, "Manager S. Price", discriminated against Mr. Mathews and changed how commissions were paid on deals he financed, such that Mr. Mathews and the sales team would evenly split 30%, with each to earn 15%. Conversely, the commissions paid on deals financed by the white finance managers did not change, such that the white finance managers would receive between 13% and 20% and the sales team would continue to earn the entire 30%. As a result of Defendant's racial discrimination, the sales team was given a financial incentive to bring their customers to the two white finance managers and provided a distinct financial disincentive to bringing customers to Mr. Mathews, thereby significantly decreasing Mr. Mathews' compensation, which was the point of the racially discriminatory change.

This change in how commissions were paid on deals Mr. Mathews financed caused the sales staff to bring their loans to the white Finance Managers because they would receive a higher percentage of the sale than they would if they brought the customer to Mr. Mathews. When sale persons complained about the

- 24 -

commission split required if they took a loan to Mr. Mathews, Defendant's Used Car Manager, Mike Sumner ("Manager Sumner"), replied that the sales people did not have to "split no deal with no niggers." In response, the white sales persons openly agreed with Manager Sumner's sentiments about not wanting to split their commission with a black person.

In addition to Mr. Mathews' complaining about the racially discriminatory pay structure to management, Mr. Bahrami participated in a meeting with several management people, including Owner M. Price and Manager S. Price, where Mr. Bahrami discussed the animosity this change in pay structure caused and how it would inevitably force Mr. Mathews to quit.      Nevertheless, Mr. Mathews' pay structure remained racially discriminatory and was not changed back to the compensation structure of the two white finance managers.

No legitimate, non-discriminatory reason existed for the difference in compensation plans between the black and white finance managers. Accordingly, Mr. Mathews was constructively discharged as he could not earn a living in light of the modified compensation structure. No reasonable person in Mr. Wilson's position, in light of the discriminatory environment, could have continued their employment.

Manager Sumner called Mr. Mathews a nigger at work.  That coupled with the disparate compensation plan was more than a reasonable person should have to endure, and Mr. Mathews found the harassment and discrimination to be unbearable  Owner M. Price, in addition to his comments that black customers cannot afford anything, made other discriminatory and harassing comments based upon religion, color, race and national origin on occasion.  Many of those comments were also directed at Mr. Mathews.

Mr. Mathews provides that Manager Sumner and Manager S. Price were the primary harassers.  The harassment occurred on a near daily basis.  Employees and management would use the phrases carpet rider, rug head, towel head, Taliban, nigger, sand nigger, bitches and hoes.  Mr. Mathews heard comments about minority employees being turban heads, accusing Mr. Bahrami of being a bomber and to be careful if the dealership van went missing and other negative and discriminatory comments about Arabs.  Mr. Mathews heard Manager S. Price not only make discriminatory and harassing comments based upon religion, national origin and race, but sexist comments as well.  He also heard Manager Sumner refer to women as whores, stupid sluts and stupid bitches.

Mr. Mathews heard Maxie Price say that these blacks can't afford anything. He heard Maxie Price make jokes based upon race (against blacks).  Once, a black

customer wrote a check for a corvette (approximately $8,000). Maxie Price commented that the customer would never be able to cover it and was instead, going to buy crack. He said that based upon the customer's race (black). That very same day, Maxie Price treated customers who were a white couple exactly opposite, as if they had money simply because they were white.

These phrases and comments would be said in the Show Room, meeting room, lunch room, upstairs in the General Manager's office. These comments would be said from morning until close every day.

Mr. Mathew's witnessed Manager Sumner alter the schedule of Mr. Wilson simply because of his race when Mr. Bahrami was not working. Mr. Mathew's witnessed Manager Sumner treating Mr. Wilson differently than white sales personnel for no other reason than the color of his skin. Mr. Mathew's witnessed comments by management (Manager Sumner and Manager S. Price) stating that Mr. Bahrami did not match the customer base. Mr. Mathew's witnessed Mr. Bahrami being called a terrorist, that his shoes were alibaba shoes and that they weren't in the desert.

Mr. Bahrami provides that he was subject to harassment and discrimination based upon his religion (Muslim), color (non-white), race (Persian/Middle Eastern) and perceived national origin (Iran) during the entire length of his employment.

- 27 -

This harassment and discrimination occurred daily and interfered with Mr. Bahrami's work and created a hostile work environment. The harassing and discriminatory comments were made on a regular basis by Defendant's supervisors and management in front of the sales staff, subordinate staff and other non-management employees of Defendant.

Mr. Bahrami's co-workers, including members of management, regularly made harassing and discriminatory comments based upon race, national origin, religion and color. On a daily basis, Mr. Bahrami's managers, supervisors and co-workers called him names, such as carpet rider, wetback, nigger, dot head, towel head, sandy (referring to the desert), sand nigger, and/or they made jokes about his Muslim faith. They would make innuendos about Mr. Bahrami being a terrorist or bomber. Management often said, "you'd better be nice to Alex or he'll have his family blow you up." On other occasions co-workers would say if the dealership's van was not on the lot, Mr. Bahrami probably had it, so nobody should go downtown. This was an undisputable reference to Mr. Bahrami acting out a terroristic plot simply because of his race, national original, religion and/or color.

Many of the harassers and discriminators were managers or supervisors of Defendant or other persons employed by Defendant who had authority to oversee his working conditions and to direct Mr. Bahrami's day-to-day activities. Manager

- 28 -

Sumner, Defendant's Used Car Manager, routinely used derogatory terms to refer to Mr. Bahrami, such as nigger, sand-nigger, wetback, bomber, carpet rider, terrorist, etc.   Manager Sumner not only made harassing and discriminatory comments about Mr. Bahrami, but he also made them about customers and other employees as well, for which Mr. Bahrami was a witness.  Upon information and belief, David Thompson heard Manager Sumner call Mr. Bahrami carpet rider.

For example, when talking to other employees about black customers, Manager Sumner routinely made comments such as "which one of those niggers is the buyer?"   Manager S. Price frequently made similar comments with discriminatory and harassing terms such as nigger, sand-nigger, wetback, carpet rider, etc. In particular, Manager S. Price routinely made discriminatory comments to Mr. Bahrami, which included calling him a rag head, carpet rider, Taliban, towel head, terrorist, bomber, etc.

When Mr. Bahrami was hired, Defendant's Owner, Maxie Price said he did not like his "look." When asked to clarify, Owner M. Price said Mr. Bahrami just had that "terrorist look."   Mr. Mathew's heard similar comments from management.  Owner M. Price ridiculed Mr. Bahrami because of his race, national origin, color and religion throughout his employment.

Mr. Bahrami provides that Manager S. Price, Maxie Price, Jr., Manager

- 29 -

Sumner and many of the staff (sales personnel) discriminated and harassed Mr. Bahrami on a daily basis.  The comments were made daily, several times a day.  Mr. Bahrami was referred to as carpet ride, sandie, sand-nigger, bomber, Osamah, terrorist, Bin Ladin, etc.  Similar jokes were made frequently.  Manager S. Price commented that if one of the cargo vans was missing on Mr. Bahrami's day off, that they should not go down town, implying that Mr. Bahrami would be perpetrating an act of terrorism or bombing.  Manager S. Price would also make regular comments about Mr. Bahrami's Muslim faith.  Manager Sumner referred to Mr. Bahrami by one of the above-referenced nicknames (i.e., sand-nigger, carpet rider, etc).  If a customer came into the dealership, that was dark skinned (i.e., Indian, Persian, Latin, etc.), Manager Sumner would say no one talk to them but Alex, since they speak the same language.  After hearing continuing remarks by management, it became common place for many employees to refer to Mr. Bahrami as sand-nigger, terrorist, Osama, etc.   Offensive, harassing, and discriminatory jokes were made daily about Mr. Bahrami's religion, race, color and national origin.

Mr. Bahrami's position kept him primarily in the "tower" or sales office in the front of the showroom.  These are the primary locations of the harassment and discrimination.  Often times, the comments were shouted across the showroom

- 30 -

floor.   Most sales personnel would have heard the offensive comments and remarks.

Mr. Bahrami confirms that he participated in a meeting wherein management (Manager S. Price, Maxie Price, Ed Braddoc) discussed the compensation structure of Mr. Mathews.   Mr. Bahrami avers that Mr. Mathews' compensation plan was altered at the direction of Manager S. Price and that, as a result, nobody wanted to take any deals to him.   Mr. Bahrami attests that the goal of changing his compensation structure was to cause Mr. Mathews to not be able to make a living.

Mr. Bahrami, as well as other minority employees, tried to get the harassing and discriminatory comments to stop.   In fact, other minority employees would respond to such comments by saying, "nobody wants to hear stuff like that." Nevertheless, the harassing and discriminatory comments continued.   Mr. Bahrami also rejected the harassment and discrimination and complained to management. Mr. Bahrimi repeatedly asked management and his co-workers to stop the harassment, but his requests were to no avail.   Mr. Bahrami was visibly upset and frustrated by the harassing and discriminatory comments.

By making and tolerating harassing and discriminatory comments, Defendant's management misled the sales staff, subordinate staff and non-

- 31 -

management employees to believe such harassing and discriminatory comments were acceptable, which resulted in an increase in the intensity and frequency of the discriminatory and harassing comments. Nothing was done by Defendant to rectify the harassment or discrimination. Mr. Bahrami was, instead, retaliated against for his opposition to such discrimination. In fact, Mr. Bahrami's employment was ultimately terminated on or about May 12, 2010, as a result of the harassment and discrimination and his objections thereto. Mr. Bahrami's termination was not related to his quality as an employee or manager. Instead, Mr. Bahrami was terminated because of discriminatory reasons, and he was retaliated against due to his opposition to the harassment and discrimination.

Mr. Bahrami provides he cannot recollect each and every complaint he made about the harassment and discrimination he was forced to endure on a daily basis. Nearly every time a comment was made, however, Mr. Bahrami expressed that he was offended and that he did not find the abuse humorous. Mr. Bahrami opposed these comments, even though it was often perpetrated by his supervisors, Maxie Price and Manager S.Price. Mr. Bahrami had credible fears about repeatedly complaining. In light of his unlawful termination, Mr. Bahrami's fear that his job would be jeopardized was obviously credible, as he was ultimately terminated despite doing a great job in his position.

- 32 -

Mr. Wilson provides that during the entire length of his employment, Mr. Wilson was subject to harassment and discrimination based upon his race (black; non-white) and religion (Muslim).   On a daily basis, Mr. Wilson's managers, supervisors and co-workers (including Manager Sumner) called him a nigger and made jokes about his Muslim faith.   They would make innuendos about all Muslims being terrorists or bombers simply because of their religion.  Mr. Wilson heard Manager Sumner and others referring to Muslims as dot heads and towel hears.  Mr. Wilson witnessed Mr. Bahrami requesting that such comments stop. Mr. Wilson heard Manager S. Price refer to Mr. Bahrami as a terrorist and that employees should not get Mr. Bahrami mad or he will drop a bomb on them.

Mr. Wilson witnessed Manager Sumner making nigger comments and comments about religion and national origin.   Mr. Wilson witnessed Manager Sumner making, without reprimand, such comments in front of Manager S. Price. Mr. Wilson heard these daily comments.  Mr. Wilson found the regular comments to be deeply offensive, which interfered with his work.   The harassment and discrimination created a hostile work environment.

On one occasion, Mr. Wilson recalled Manager Sumner talking about a contest the dealership held wherein customers would see if the key fit a car in order to get a prize.   Manager Sumner made derogatory comments about the blacks

- 33 -

participating in the contest being niggers because the customers thought the contest was not legitimate.

The majority of Mr. Wilson's daily harassers and discriminators were managers or supervisors of Defendant who had authority to oversee his working conditions and to direct Mr. Wilson's day-to-day activities.     Owner M. Price also harassed and discriminated against black people.   For example, Owner M. Price regularly stated that "those people" (clearly referring to black people) cannot afford anything. Manager S. Price frequently made harassing and discriminatory comments based on race.  Manager Sumner also expressed his hatred of minorities on a daily basis.  Manager Sumner called black employees "boy."  This chosen terminology was clearly intended to be racially derogatory.

Mr.  Wilson  provides  that  derogatory,  harassing  and  discriminatory comments  were  constantly  made  by  Mike  Sumner  and  Manager  S.  Price. Practically every time Mr. Wilson would go to the sales office, comments were made, such as nigger, camel jockey, carpet rider, and incessant discussions about women's body parts in a sexual and negative manner.  Manager Sumner and Manager S. Price were the primary instigators on a daily basis.

Manager Sumner also used words like "nigger" to describe black customers. In additional to his daily comments and remarks, Manager Sumner accomplished

- 34 -

his harassment and discrimination of Mr. Wilson with a disparate application of work rules for white versus black employees.  For example, white, non-Muslim Salesmen in comparable positions were permitted by Manager Sumner to set their own schedules.  Despite not being paid on an hourly basis, Manager Sumner did not permit Mr. Wilson that same opportunity to set his own schedule.  Manager Sumner also reduced Mr. Wilson's hours, so he would make less money.

Mr. Wilson complained to Defendant's management about the disparity in the treatment between white and black employees.  Mr. Mathews also complained to Mr. Wilson about the discrimination and harassment.  Mr. Wilson complained to Defendant's management about the harassment and discrimination.  Nothing was done by Defendant to rectify the harassment or discrimination.  Instead, in response to his complaints about the discrimination, Manager Sumner informed Mr. Wilson that he could either work less hours, thereby reducing his earning potential, or he would lose his job.  As such, Mr. Wilson was constructively discharged by Defendant.  No reasonable person in Mr. Wilson's position, in light of the discriminatory environment, could have continued their employment with Defendant.  Mr. Wilson was discriminated against because of his race and religion and his protected opposition to such discrimination.

Mr. Wilson provides that he complained several times to his direct supervisor, Mr. Bahrami about the constant name calling and derogatory statements that were made almost every time he would interact with the manager's desk.   The statements would be discriminatory comments about Muslims or African Americans.  It was an unbearable work environment.

Plaintiffs also collectively provide that management, supervisors, owner(s) and co-workers freely harassed and discriminated against minorities based upon their race, national origins, color, religion, and sex.   Mr. Wilson witnessed Manager S. Price and Maxie Price referring to female customer's asses and referred to them as bitches.   Other minorities were routinely degraded.  Women were, for example, treated as sexual objects.  Women customers and employees were called bitch and whore.  Manager S. Price and Manager Sumner would talk about their buttocks in a derogatory manner.

The discrimination and harassment was daily, extremely hostile, humiliating, physically threatening, demeaning and widespread. Plaintiffs were all forced to watch each other's discrimination and harassment and that of other minority customers and employees.

The discrimination and harassment of minorities was tolerated and encouraged.   Those who opposed the discrimination and harassment were

- 36 -

retaliated against. Mr. Bahrami was fired, Mr. Wilson was forced to resign and Mr. Mathews was likewise left with no option but to leave his employment.

Defendant, in violation of Plaintiffs' rights, failed to: (a) provide Plaintiffs with employment wherein they could be free from harassment, discrimination and retaliation; (b) respond promptly to Plaintiffs' complaints of harassment and discrimination; (c) thoroughly investigate Plaintiffs' complaints of harassment, discrimination and harassment; (d) take appropriate remedial action when Defendant knew or should have known of same; (e) discharge, suspend, reprimand or otherwise appropriately and timely discipline Plaintiffs' managers or other employees of Defendant who either perpetrated, acquiesced in, or ignored the harassment, discrimination and retaliation; (f) not retaliate against Plaintiffs for engaging in a protected activity; and (g) enforce its own policies and procedures.

**REQUEST NO. 16**

If you claim any physical, mental or emotional injuries in the incident which is the subject matter of the above-captioned lawsuit, please describe all injuries sustained by you, setting forth in detail the nature and extent thereof, when you first became aware of each injury, and whether or not any of the injuries are permanent.

**RESPONSE NO. 16**

- 37 -

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity. Subject to and not waiving these objections, Plaintiffs provide they suffered mentally, emotionally and psychologically from the discrimination, harassment and retaliation. Legally speaking, Plaintiffs allege "garden variety" emotional distress and did not seek treatment with a mental health care professional.

**REQUEST NO. 17**

Please describe the compensation agreement with your attorney, including percentages for contingent fees and hourly rates for hourly billing.

**RESPONSE NO. 17**

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery. Subject to and not

waiving these objections, Plaintiffs have a 40% contingent fee agreement, as is customary in such actions.

REQUEST NO. 18

Please describe total attorneys fees incurred to date along with which attorneys have billed which amounts.

RESPONSE NO. 18

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories. Subject to and not waiving these objections, Plaintiffs provide that the information sought is premature and not subject to production at this time. Plaintiffs refer Defendant to Plaintiffs' First Privilege Log.

REQUEST NO. 19

Pursuant to Federal Rule of Civil Procedure 26(b)(3)(C) please identify the name, address, telephone number and employer of any managers and/or managing agents of Defendant from whom any statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded,

Exhibit 2

voluntary, involuntary, etc...) have been taken by you or by anyone acting on your behalf regarding Plaintiff's claims or Defendant's defenses in this matter.

RESPONSE NO. 19

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories. Subject to and not waiving these objections, Plaintiffs refer Defendant to Plaintiffs' First Privilege Log.

<u>SPECIFIC REQUEST FOR PRODUCTION</u>
<u>RESPONSES AND OBJECTIONS</u>

Without waiving the above General Responses and Objections, Plaintiffs make the following specific answers, responses and objections. Plaintiffs remind Defendant that they have produced Plaintiffs' First Privilege Log herewith and provided a copy of the insurance agreements with their Initial Disclosures, which is not being duplicated herewith.

REQUEST NO. 1

- 40 -

All documents identified by you in your responses to Defendant's First Interrogatories, above.

RESPONSE NO. 1

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; violates privacy rights or require the release of proprietary information; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information, which is a matter of public record and would cause undue burden to expense to Plaintiffs; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections:

Mr. Mathews attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Bahrami attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Wilson attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

## REQUEST NO. 2

All documents and physical items which substantiate, relate to, or are in anyway relevant to your claims of harassment, discrimination, and other misconduct alleged in your Complaint, Defendant's defenses, or any issue related to this matter, including but not limited to any documents and items which you claim were prepared by Defendant as a part of the alleged harassment and discrimination, and any documents and items you prepared for any reason regarding Defendant.

## RESPONSE NO. 2

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; violates privacy rights or require the release of proprietary

- 42 -

information; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information, which is a matter of public record and would cause undue burden to expense to Plaintiffs; requests information not presently in Plaintiffs' possession or control.   Subject to and not waiving these objections:

Mr. Mathews attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Bahrami attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Wilson attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

**REQUEST NO. 3**

All documents which evidence, support or are relevant to your claims of special, general or punitive damages in this case.

- 43 -

**RESPONSE NO. 3**

See General Response and Objections Numbers 1 through 14.  Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; requests information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections:

Mr. Mathews attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Bahrami attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Wilson attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

**REQUEST NO. 4**

All statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded, voluntary, involuntary, etc...) taken

from any person with respect to the facts of this case and/or which resulted from any investigation conducted by any person regarding claims asserted in this case and defenses thereto as identified in your responses to Interrogatories 3, 4, or 5.

RESPONSE NO. 4

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; requests information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections:

Mr. Mathews attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Bahrami attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Wilson attaches herewith all non-privileged, relevant documents in his

possession, custody or control responsive to this request, which are subject to production.

REQUEST NO. 5

EXCEPT FOR THOSE PERSONS WHOM PLAINTIFF INTENDS TO CALL ONLY FOR THE PURPOSES OF IMPEACHMENT: All statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded, voluntary, involuntary, etc...) taken from any person with respect to the facts of this case and/or which resulted from any investigation conducted by any person regarding claims asserted in this case and defenses thereto as identified in your responses to Interrogatories 3, 4, or 5.

RESPONSE NO. 5

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; violates privacy rights or require the release of proprietary information; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information, which is a matter of public record

and would cause undue burden to expense to Plaintiffs; requests information not presently in Plaintiffs' possession or control.  Subject to and not waiving these objections:

Mr. Mathews attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Bahrami attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Wilson attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

**REQUEST NO. 6**

All correspondence, e-mails, letters, or communications of any kind or nature between Plaintiff and any employee or representative of Defendant, or any former employee of Defendant.

**RESPONSE NO. 6**

See General Response and Objections Numbers 1 through 14.  Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to

the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; does not request information with reasonable particularity; requests information not presently in Plaintiffs' possession or control.

## REQUEST NO. 7

All documents which relate to Plaintiff's employment at Defendant including all documents which relate to job performance while employed by Defendant.

## RESPONSE NO. 7

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; requests information not presently in Plaintiffs' possession or control. Subject to and not waiving these objections:

Mr. Mathews attaches herewith all non-privileged, relevant documents in his

- 48 -

possession, custody or control responsive to this request, which are subject to production.

Mr. Bahrami attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

Mr. Wilson attaches herewith all non-privileged, relevant documents in his possession, custody or control responsive to this request, which are subject to production.

## REQUEST NO. 8

Please provide copies of the compensation contract with your attorneys as well as itemized billing and/or time records from attorneys showing hours billed and fees incurred to date.

## RESPONSE NO. 8

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories. Plaintiffs contend that this request is premature and will produce responsive information at the appropriate time.

## REQUEST NO. 9

Pursuant to Federal Rule of Civil Procedure 26(b)(3)(C) please provide copies any statements of any kind (oral, written, signed, unsigned, sworn, unsworn, audio recorded, video recorded, voluntary, involuntary, etc...) which have been taken by you or by anyone acting on your behalf regarding Plaintiff's claims or Defendant's defenses in this matter from any managers and/or managing agents of Defendant.

## RESPONSE NO. 9

See General Response and Objections Numbers 1 through 14. Specifically, and as set forth above with greater specificity, Plaintiffs object to this Request to the extent it seeks irrelevant discovery; is vague, overly broad and unduly burdensome; seeks information immune from disclosure due to privilege; requires Plaintiffs to speculate prior to the completion of discovery; requires disclosure of mental impressions, opinions or legal theories; requests information not presently in Plaintiffs' possession or control.

Respectfully submitted this the _____ day of March, 2012.

By:

GREENFIELD MILLICAN P.C.
Lisa T. Millican
Georgia Bar No. 309046
607 The Grant Building
44 Broad Street, N.W.
Atlanta, Georgia 30303
(404) 522-1122 (telephone)
(404) 522-1133 (facsimile)
lisa.millican@lawofficepc.com

ATTORNEY FOR PLAINTIFFS

Exhibit 3

## FIRST PRIVILEGE LOG

| TYPE | AUTHOR | STORED | SUBJECT | PRIVILEGE CLAIMED |
|---|---|---|---|---|
| Witness statements, including audio recordings and written statements | Various | Counsel's file | Plaintiff's claims and defenses | Work product |
| Fee Agreements | Counsel | Counsel's File | Fee Agreement | Work product Attorney/client<br><br>Not yet ripe for production |
| Litigation expenses – receipts – billing records | Various | Counsel's File | Litigation Expenses | Work product Attorney/client<br><br>Not yet ripe for production |

Exhibit 4

## DECLARATION OF B. BRENT TERRY

### 1.

My name is B. Brent Terry.  I have personal knowledge of the facts set forth in this declaration and know them to be true and correct.  I am over the age of eighteen years, am suffering no disabilities and am competent to execute this declaration.

### 2.

I represented Maxie Price Chevrolet-Oldsmobile, Inc. (Maxie Price) in the matter of Amir Alexander Bahrami, et al. v. Maxie Price Chevrolet-Oldsmobile, Inc., Civil Action No. 1:11-CV-04483, from the time the lawsuit was filed until I was substituted as counsel by Joyce Mocek, Esq. and Benton J. Mathis, Esq. of Freeman Mathis & Gary, LLP, on or about September 12, 2012.

### 3.

Before suit was filed, Plaintiff's counsel used the audio tape recordings and other evidence as a bargaining chip, agreeing to provide additional evidence to Defendant if and when Defendant made a settlement offer.  Plaintiff's discovery responses also indicated that he possessed audio recordings relevant to this case.

### 4.

Plaintiff's counsel and I discussed the production of these audio recordings and Plaintiff's privilege log in both letters and emails from June-August, 2012.

5.

I sent Plaintiff's counsel an email on August 15, 2012 regarding the audio recordings and Plaintiff's privilege log. At that time, I did not intend to further press the issue of whether Plaintiff needed to update her privilege log nor did I intend to take further actions to obtain the recordings.

6.

However, I did not understand that Ms. Millican and I were reaching a binding agreement. Instead, I viewed the August 15 email as an informal compromise on a discovery issue. I also understood that, both Ms. Millican and I were free to change or reconsider this informal compromise at any time prior to the deposition of the unidentified individual mentioned in the August 15 email.

7.

On August 24, Plaintiff's counsel and I exchanged emails regarding staying depositions in this case. After I responded to an email from Plaintiff's counsel, she sent me a follow-up email attempting to agree that the "same" agreement from the August 15 email should apply to our August 24 email. I do not recall ever receiving this email, and I do not recall responding to this email. I did not understand that depositions were stayed in return for any agreement regarding the Plaintiff's recordings and privilege log.

8.

When Freeman Mathis & Gary, LLP took over the defense of this matter, I believed that the decision of whether or not to seek the recordings and an updated privilege log was going to be left to Defendant's new counsel.

9.

By my signature below, I declare, under penalty of perjury, that the foregoing is true and correct.

B. Brent Terry

10/19/12
DATE

Exhibit 5

**From:**            B. Brent Terry <b.brent.terry@zurichna.com>
**Sent:**            Wednesday, August 15, 2012 11:13 AM
**To:**              lisa.millican@lawofficepc.com
**Subject:**         Re: Continued Good Faith Discussions


Lisa,

I'll agree to the compromise you proposed to produce the one audio
recording of current management or management employed at the time of the
statement at the end of that person's deposition.

I agree with your analysis re:  the privilege log.

Regarding the personnel files, I can't just ship the originals to your
office.  However, here's what I can do:  1) Have the files brought to my
office and then set up time when you can review them here, or 2) If you
want to pay for it - I can have all of the files copied and deliver the
copies to you.

I think this covers everything.  Let me know what you want to do as far as
reviewing / copying the personnel files.

Thanks.

-    Brent Terry
     404/705-5850



     "Lisa T.
     Millican"
     <lisa.millican@l                        To
     awofficepc.com>        "'B. Brent Terry'"
                 <b.brent.terry@zurichna.com>
     08/13/2012 09:15                         cc
     PM
                         Subject
              Continued Good Faith Discussions






Brent:

1

(1) How many audio recordings fall into your specified category – I checked and found one audio made by client (not me) of current management or management employed at the time the statement was made.

(2) Impeachment v. Substantive Evidence & Time, if at all, for Production of Such Evidence - Please find attached the case law I referenced, which I do not believe requires production of any witness recordings prior to depositions if the intended use is predominantly as impeachment evidence, not substantive evidence.  I read the Maryland case you provided (Newsome v. Penske). The Newsome court found little case law on whether evidence can be withheld if to be used as impeachment evidence.  The Eleventh Circuit, however, has ample case law directly on point.

In Stamps v. Encore Receivable Management, Inc., 232 F.R.D. 419 (N.D. Ga. 2005), the Plaintiff sought a protective order to delay production of the recording in a FDCPA case until after the depositions of defendant's representatives. This Court balanced the rights of defendant to full discovery versus plaintiff's right to defendant's unrefreshed recollection of the events that gave rise to the litigation. This Court similarly based its decision on whether the recordings were substantive versus impeaching evidence. In that case, the recordings were identified as key evidence in the complaint and were intended to establish the truth of her assertions (that defendant violated the FDCPA). Thus, under those circumstances, which are not applicable here, this Court established that the inquiry is whether the evidence is for impeachment or substantive evidence.

In Young v. BC Services, Inc., 2011 WL 2443765 (S.D. Ala. 2011), the Court found that a party's right to discovery is not absolute and when good cause is shown for limiting discovery, the Court should order same.  In Young, the plaintiff accused defendant of making harassing phone calls in violation of the FDCPA.  The Defendant sought a protective order concerning production of these telephone recordings under after Plaintiff's deposition.  Similar to Young, the court in our case will, at best, require production after the deposition when the recording is intended for impeachment, even if it has some substantive value (a slightly different analysis is done in the Eleventh Circuit, as opposed to the Maryland case you provided).

In Taylor v. The Guardian Life Ins. Co, 2007 US Dist. LEXIS 29764 (S.D.Ga. 2007), which is directly on point, the plaintiff argued that defendants wrongly denied plaintiff disability benefits and sought an order compelling defendant to produce surveillance video of plaintiff.  Plaintiff alleged the evidence was substantive evidence, which should be produced pre-deposition.  Defendants argued the impeachment value outweighed the substantive evidentiary value even though it was a video of a party.  The Court balanced the respective interests and order production after plaintiff's deposition even though the recording has substantive value.

Once you have the opportunity to review the 11th Circuit Case law I provided on this issue, let me know if you still think we need to provide the Court the audio for an in-camera inspection to determine whether it is impeachment or substantive evidence.  I think you will find that production post-deposition is the appropriate remedy under the circumstances because all the cases (mine and yours) seem to agree that production can be delayed until after the deposition of the party.  As such, as a compromise on the one recording of current management, I will agree to produce it at the end of the person's deposition.

concerning whether I have to produce the names of people for which we have audio recordings or affidavits/declarations.

As it relates to the adequacy of Mr. Bahrami's privilege log, Federal Rule of Civil Procedure 26(b)(5) provides, in pertinent part, that when making a claim of privilege or work-product, the party must inform the other party of its claims and describe the nature of the communications that will enable the parties to assess the claim without simultaneously revealing the privileged or protected information. The Rule states:

> (A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

This is exactly what Mr. Bahrami did. I do not believe Defendant has identified any additional information necessary to support the work-product objection.

Mr. Bahrami clearly identified that he had various witness statements and expressly asserted work product as the basis for withholding those statements. The log is adequate to place Defendant on notice.

The work product doctrine permits a party to withhold witness statements from the opponent. See Hickman v. Taylor, 329 U.S. 495, 511-512, 67 S. Ct. 385, 394 (1947). By virtue of the privilege log, Defendant was put on notice that Plaintiff was withholding witness statements, as is permitted by the work-product doctrine.

Moreover, a statement by statement, document by document privilege log would, itself, have revealed Plaintiff's work product by revealing the identities of the individuals that Plaintiff interviewed. As stated in United States v. Gericare Med. Supply, Inc., 2000 U.S. Dist. LEXIS 19662 (S.D. Ala. 2000):

> A document-by-document privilege log would have revealed the identity of each person interviewed, information that itself would reveal the plaintiff's strategy and mental processes. Because Rule 26(b)(5) does not require a party to sacrifice work product protection in order to assert it, a category-by-category log was appropriate. E.g., Seebeck v. General Motors Corp., 1996 U.S. Dist. LEXIS 22629, 1996 WL 742914 at 3 (N.D. Ga. 1996)(categorical privilege log appropriate where the identification of interviewed witnesses would broach the attorney's mental processes).

Moreover, the very case cited by the defendants notes that the Court has discretion to limit the extent of disclosures, especially if "the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded." Securities & Exchange Commission v. Thrasher, 1996 U.S. Dist. LEXIS 3327, 1996 WL 125661 at

2  (S.D.N.Y. 1996).  The defendants have not explained how a
categorical privilege log impaired their ability to test the
plaintiff's claim of work product protection, which rises or falls as
a unit.

       Manske is not controlling authority.  Gericare and Seebeck are.
I do not believe we owe you a more detailed privilege log detailing the
names and dates of any statements, as providing same would simply give you
a roadmap into our litigation strategy, which the law does not require.
Please let me know if you disagree once you've had a chance to read this
line of authority.


(4) Production of Personnel Files - After I thought about it, I am not sure
reviewing 12 bankers boxes in Maxie Price's conference room makes sense
given that I can't do it in a day or even two.  Can I, instead, have them
picked up and brought to my office?  I will even do it personally.  I will
not take anything out of order and will place originals back in the same
place after copying.  Thoughts?  Thereafter we can schedule a good faith
conference to discuss what's outstanding, if anything.

I believe this is everything.  Let me know if I inadvertently failed to
address anything else and look forward to determining if we can reach a
viable compromise.

Thanks.

       Lisa T. Millican, Esq.
       GREENFIELD MILLICAN P.C.
    The Grant Building, Suite 607
      44 Broad Street, N.W.
      Atlanta, Georgia 30303
     Direct Dial (404) 522-1122
     Facsimile (404) 522-1133
    Lisa.Millican@lawofficepc.com
      www.lawofficepc.com


This message may be protected by the attorney client and/or work
product doctrine.  If you believe that it has been sent in error, do
not read it.  Please reply to the sender that you have received the
message in error and then delete it.  Thank you.




****************** PLEASE NOTE ******************
This E-Mail/telefax message and any documents accompanying this

transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above.  If you are not the intended addressee/recipient, you are hereby notified that any use of, disclosure, copying, distribution, or reliance on the contents of this E-Mail/telefax information is strictly prohibited and may result in legal action against you. Please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents.  Thank you.

Exhibit 6

B. Brent Terry/SLS/USA/Zurich
08/24/2012 10:50 AMTo
    "Lisa T. Millican" <lisa.millican@lawofficepc.com>@ZURICH-INTERNET,
    cc
    joshua.millican@lawofficepc.com,
    bcc

    Subject
    RE: Issue with depositions - Bahrami v. Maxie Price Chevrolet

Yes we are in agreement.....and I think a lot of that is already in the scheduling order too.

"Lisa T. Millican" <lisa.millican@lawofficepc.com>
08/24/2012 10:50 AM
    To
    "'B. Brent Terry'" <b.brent.terry@zurichna.com>,
    cc
    <joshua.millican@lawofficepc.com>,
    Subject
    RE: Issue with depositions - Bahrami v. Maxie Price Chevrolet

Brent:

Thanks for calling.  To confirm our discussion in writing for future counsel, I will still come this afternoon to identify the 6 boxes you agreed to send to a service to scan onto a disc completely prior to sending them to new counsel or back to Maxie Price.  I am foregoing reviewing the last 4 boxes today based upon that agreement.  I assume you can have this done by the end of next week.  If that's not acceptable, let me know.
Let's discuss doing all 12 boxes when we meet this afternoon but as of right now, the agreement is for the 2010 through current employee boxes (six in total).

Based upon your word that outside counsel is being brought in and that they need to time to review the file prior to the current deposition dates, I agree to postpone depositions for a short period (no more than 4 additional weeks unless agreed upon by all parties in writing). That agreement is conditioned upon the same order of depositions (Maxie Price, Jr.(on a Tuesday), next day Scott Price (Wednesday), next day Alex (Thursday)); Maxie serving as 30b6/and personally simultaneously; no objections will be filed to the scope of the 30b6 examination; no new notices will need to be issued and the prior notices are controlling; no additional discovery or subpoenas will be propounded by either side prior to these depositions taking place; settlement discussions will follow the first 2 depositions; same agreement controls on audio/discovery production costs (CD is still fine); discovery shall be exchanged in word and responses sent electronically in word 20 days thereafter (unless otherwise agreed in writing); parties will agree to consent to discovery extension if necessary. I think that covers everything we've talked about leading up to this point. If I missed anything please let me know.

Please also inform opposing counsel we want to depose Lisa after Alex's deposition and would like to get a date scheduled.

Are we in agreement? --- Lisa

P.S. It's truly been a pleasure working with you and I look forward to the next case...


Lisa T. Millican, Esq.
GREENFIELD MILLICAN P.C.
The Grant Building, Suite 607
44 Broad Street, N.W.
Atlanta, Georgia 30303
Direct Dial (404) 522-1122
Facsimile (404) 522-1133
Lisa.Millican@lawofficepc.com
www.lawofficepc.com

Exhibit 7

-----Original Message-----
From: Lisa T. Millican [mailto:lisa.millican@lawofficepc.com]
Sent: Friday, August 24, 2012 1:32 PM
To: 'B. Brent Terry'
Cc: 'joshua.millican@lawofficepc.com'
Subject: RE: Issue with depositions - Bahrami v. Maxie Price Chevrolet

I realize my email below was slightly unclear, and to avoid any uncertainty in the future, our agreement on the audio, statement and supplementation of the privilege log remains the same (see 8/15/12 11:13 am email from you) and is part and parcel of today's agreement.

FYI, we are leaving our office now.

Lisa T. Millican, Esq.
GREENFIELD MILLICAN P.C.
The Grant Building, Suite 607
44 Broad Street, N.W.
Atlanta, Georgia 30303
Direct Dial (404) 522-1122
Facsimile (404) 522-1133
Lisa.Millican@lawofficepc.com
www.lawofficepc.com

-----Original Message-----
From: B. Brent Terry [mailto:b.brent.terry@zurichna.com]
Sent: Friday, August 24, 2012 12:08 PM
To: lisa.millican@lawofficepc.com
Cc: joshua.millican@lawofficepc.com
Subject: RE: Issue with depositions - Bahrami v. Maxie Price Chevrolet

Yes we are in agreement.....and I think a lot of that is already in the scheduling order too.